UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL CHEEK, *Plaintiff*, vs. MARCUS CLARK, *Defendant*. | ) | No. 1:21-cv-01079-JMS-DLP |

**ORDER**

*Pro se* Plaintiff Michael Cheek was a passenger in a car driven by Lisa Cheek when they were pulled over by Columbus Police Department Officer Kyle Weaver on the evening of March 12, 2021. When Officer Weaver requested assistance on the scene, Defendant Officer Marcus Clark and his K-9, Bane, arrived to provide assistance. Michael and Lisa were removed from the car and Bane conducted a free air sniff of the car, during which he detected the presence of narcotics. As Officer Clark led Bane away from the car, they passed close to Michael, and Bane jumped toward Michael and bit him. Michael then initiated this lawsuit, in which he asserts that Officer Clark violated his Fourth and Fourteenth Amendment rights by using excessive force against him due to the bite he received from Bane. Officer Clark has filed a Motion for Summary Judgment, to which Michael did not respond. [Filing No. 32.] The Motion for Summary Judgment is now ripe for the Court's decision.

## I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court

what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
## STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summery judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). Further, because Michael has not responded to the Motion for Summary Judgment, the Court accepts each of the properly asserted facts in the motion as undisputed.

### A. Officer Clark and Bane

Officer Clark is a police officer with the Columbus Police Department and is a K-9 handler who has been trained to handle and deploy a K-9 officer. [Filing No. 33-1 at 1.] Officer Clark is the handler for K-9 officer Bane, and was Bane's handler on the evening of March 12, 2021. [Filing No. 33-1 at 1-2.] Officer Clark and Bane have received extensive training in patrol and narcotics detection, and are certified in narcotics detection, use of force, and apprehension. [Filing No. 33-1 at 1.] Officer Clark and Bane are re-certified each year, through continuing education, training, and testing. [Filing No. 33-1 at 2.] Bane is specifically trained in the "bite and hold" technique, and if Officer Clark orders Bane to locate or apprehend a suspect, Bane is trained to maintain a bite of the suspect's limbs to prevent the suspect from fleeing. [Filing No. 33-1 at 4.]

**B. The March 12, 2021 Incident**[1]

On March 12, 2021, Officer Weaver initiated a traffic stop for a traffic infraction on a blue Mitsubishi. [Filing No. 33-2 at 1-2.] Lisa was driving the car and Michael was sitting in the rear seat behind her. [Filing No. 33-2 at 1.] After the car pulled over, Officer Weaver requested that a K-9 unit respond to the scene. [Filing No. 33-2 at 1.] Officer Clark and Bane arrived on the scene, and Officer Clark approached the car. [Filing No. 33-2 at 2.] He observed Michael and Lisa moving around inside the car, and became concerned that they could either be grabbing a weapon or hiding or destroying contraband. [Filing No. 33-1 at 2.] Officer Clark ordered Michael and Lisa to stop moving and to keep their hands visible. [Filing No. 33-1 at 2.] When Michael and Lisa continued moving around, Officer Weaver and Columbus Police Department Officer Aaron Graham removed them from the car, handcuffed them, and led them to an area behind the car. [Filing No. 33-1 at 2; Filing No. 33-2 at 2.]

After Michael and Lisa were moved away from the car, Officer Clark ordered Bane to conduct a free air sniff of the car. [Filing No. 33-1 at 2.] When Bane alerted to the presence of narcotics, Officer Clark told him, "Good boy." [Filing No. 33-1 at 3.] Officer Clark led Bane away from the car with the intention of securing him back in the police car. [Filing No. 33-1 at 3.] Officer Clark indicated to Officers Weaver and Graham "It's yours," referring to Lisa's car and indicating that Bane had positively alerted to the presence of narcotics. [Filing No. 33-1 at 3.]

---

[1] The March 12, 2021 incident was captured by body cameras worn by the officers who were present at the scene, as well as by Officer Weaver's dash camera, and Officer Clark has submitted all of that footage in support of his Motion for Summary Judgment. [Filing No. 34.] The Court has reviewed the footage, and notes that it is consistent with the officers' affidavits also submitted in support of the Motion for Summary Judgment, and on which the Court primarily relies in setting forth the undisputed facts.

As Officer Clark and Bane walked back toward Officer Clark's police car, they passed where Michael and Lisa were standing. [Filing No. 33-1 at 3.] Bane jumped toward Michael's arm and put his snout near Michael's arm. [Filing No. 33-1 at 3.] Within one second, Officer Clark immediately pulled Bane away, led him back to the police car, and secured him. [Filing No. 33-1 at 3.] Michael said, "He just bit me, dude!" [Filing No. 33-1 at 3.] Officer Graham saw Bane jump toward Michael's arm but did not see Bane bite Michael, and Officer Weaver did not see Bane jump towards Michael. [Filing No. 33-2 at 2; Filing No. 33-3 at 2.]

Officer Clark did not intend for Bane to use any force on Michael, or for Bane to bite, hold, sniff, or make any contact with Michael. [Filing No. 33-1 at 3.] Officer Clark did not order Bane to bite, hold, sniff, or make any contact with Michael, and did not purposely make any movement or indication that he wanted Bane to bite, hold, sniff, or make any contact with Michael. [Filing No. 33-1 at 3.] Neither Officer Graham nor Officer Weaver saw Officer Clark make any movement or indication signaling for Bane to use any force on Michael, or hear Officer Clark order or command Bane to use any force on Michael. [Filing No. 33-2 at 2; Filing No. 33-3 at 2.]

Bane's body language did not indicate that he was acting aggressively or stressed at the time he jumped up toward Michael – instead, his body language was playful and curious. [Filing No. 33-1 at 3-4; Filing No. 33-3 at 2.] Nothing in Bane's demeanor or body language indicated that he was in a mode to bite, apprehend, or cause injury to any individual. [Filing No. 33-1 at 4; Filing No. 33-3 at 2.] Bane was not barking and his ears were relaxed immediately before jumping up, which indicates that he is not aggressive or going to bite, locate, or apprehend a suspect. [Filing No. 33-1 at 4.]

Often, if Bane does a good job, Officer Clark will say "Good boy," and allow Bane to play with a toy for a few seconds as a reward. [Filing No. 33-1 at 4.] Officer Clark believes that Bane

was looking to play or looking for a toy when he jumped towards Michael. [Filing No. 33-1 at 4.] Although Officer Clark saw Bane jump towards Michael, he did not see him bite Michael[2] and did not see his mouth or teeth make contact with Michael's arm. [Filing No. 33-1 at 4.] Bane did not attempt to use the "bite and hold" technique when he jumped toward Michael, and Bane continued to walk toward the police car as soon as Officer Clark pulled him away from Michael. [Filing No. 33-1 at 4.]

After Officer Clark put Bane in the police car, he joined Michael, Lisa, and Officers Weaver and Graham. [Filing No. 33-1 at 4.] Officer Clark saw a very small red mark where Michael said that Bane had bitten him, and stated to Michael, "if he had bitten you, he would have latched onto you." [Filing No. 33-1 at 4.]

Out of an abundance of caution, Officers Clark, Weaver, and Graham treated the red mark as a dog bite and Michael was transported to Columbus Regional Hospital where he received medical treatment, and then was transported to the Bartholomew County Jail. [Filing No. 33-1 at 5.] At the hospital, the Officers took photographs of the red mark on Michael's arm, one of which appears to show a small puncture wound:

[2] Officer Clark disputes that Blane bit Michael at all, but the Court must view the facts in the light most favorable to Michael, as the non-movant. *Darst*, 512 F.3d at 907.



[Filing No. 33-1 at 5; Filing No. 33-4.]

Based on the contraband discovered in the car, Michael was charged with possession of methamphetamine and unlawful possession of a syringe. [Filing No. 33-1 at 5.]

### C. The Lawsuit

Michael initiated this lawsuit on April 28, 2021, asserting claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights "[b]y excessive force being used," and "for officers not having probable cause to have any force to be use[d]" against him. [Filing No. 1 at 2.] Officer Clark has now moved for summary judgment on Michael's claims. [Filing No. 32.]

## III.
## DISCUSSION

In support of his Motion for Summary Judgment, Officer Clark argues that Michael cannot show that his constitutional rights were violated because, even assuming that Bane bit Michael,

there is no evidence that the bite was the result of intentional conduct by a governmental actor. [Filing No. 36 at 9-10.] He asserts that "[t]he officers' sworn testimony and the camera footage show this was an accident – Officer Clark did not take any intentional action to use force against [Michael] or seize him under the Fourth Amendment." [Filing No. 36 at 10.] Officer Clark contends that he "cannot be liable to [Michael] because there was no intention to deprive [Michael] of life, liberty, or property, nor was there an intentional acquisition of physical control." [Filing No. 36 at 12 (emphasis and quotation omitted).] He points to cases from the Sixth Circuit Court of Appeals and District Courts outside of the Seventh Circuit involving factually similar circumstances and finding that negligence in failing to properly secure a K-9 officer does not amount to a constitutional violation. [Filing No. 36 at 12-15.] Officer Clark also argues that the fact that Bane "only nipped" Michael, instead of using the "bite and hold" technique, "demonstrates that [he] did not command Bane to bite, hold, sniff, or otherwise make contact with [Michael]." [Filing No. 36 at 15-16.] Finally, Officer Clark argues that to the extent Michael asserts a claim for a due process violation, such a claim would fail due to "a total absence of intentional action on the part of Officer Clark." [Filing No. 36 at 16.]

At the outset, the Court notes Local Rule 7-1(c)(5), which provides that "[t]he court may summarily rule on a motion if an opposing party does not file a response within the deadline." Because Michael has not responded to Officer Clark's Motion for Summary Judgment, the Court summarily **GRANTS** the motion on that basis alone. The Court also finds, however, that Officer Clark's arguments are well-taken for the reasons outlined below. Michael asserts claims under the Fourth and Fourteenth Amendments. [*See* Filing No. 1.] The Court addresses each claim in turn.

### A. Fourth Amendment Claim

The Fourth Amendment provides that the "right of the people to be secure in their persons,…against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. The United States Supreme Court has held that a negligent act cannot be the basis for a Fourth Amendment claim. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) (holding that Fourth Amendment excessive force claim failed where individual led police on high speed chase and was killed when he crashed into police roadblock because "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control" and the Fourth Amendment "addresses misuse of power, not the accidental effects of otherwise lawful government conduct") (quotations and citations omitted).

Here, there is simply no evidence that Officer Clark ordered Bane to engage with Michael in any way, let alone to jump up on him or bite him. All of the evidence – which is undisputed by Michael – shows that Bane jumped up on Michael without any order to do so, that Officer Clark was surprised that Bane did so, and that Officer Clark immediately – within one second – pulled Bane off of Michael and secured him in his police car. Bane's unintentional contact with Michael, even though it resulted in a bite, does not form the basis for a Fourth Amendment claim under the circumstances presented in this case. *See Neal v. Melton*, 453 Fed. App'x 572, 577 (6th Cir. 2011) (unsecured K-9's acts of getting out of police car, jumping into back seat of suspect's car where child was sitting in a safety seat, and scratching the child "[was] not the type of intentional or knowing contact required for a § 1983 claim"); *Dunigan v. Noble*, 390 F.3d 486, 492-93 (6th Cir. 2004) (no constitutional violation where police officer did not command K-9 to bite bystander and K-9 instead was reacting to bystander entering "dog's defensive perimeter"); *Lopez v. Hammack*, 2020 WL 2201899, at *7 (M.D. Ala. May 6, 2020) ("[Plaintiff] does not cite any binding authority

establishing that, under the circumstances [the police officer] faced, he could be held liable under the Fourth Amendment for excessive force based upon his police dog's spontaneous bite of an individual where, when, and who he did not command the attack."). And the Court also finds it significant that had Officer Clark ordered Bane to apprehend Michael, Bane would have engaged in a bite and hold, which would have resulted in a much more significant injury than the one that Michael suffered – which appeared to be a small puncture wound.

In short, there is no evidence from which a reasonable factfinder could conclude that Officer Clark violated Michael's Fourth Amendment rights by using excessive force when Bane bit Michael.

**B. Fourteenth Amendment Claim**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). As with a Fourth Amendment claim, the Supreme Court has found that intentional conduct by the defendant is needed to support a Fourteenth Amendment due process claim. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligent act of leaving pillow on prison stairs, which inmate later slipped on, was not a Fourteenth Amendment due process violation because "lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person [and t]o hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law").

As discussed above, the evidence shows that Bane bit Michael of his own volition, without any order from Officer Clark to do so or to engage with Michael in any way. A reasonable jury

could not conclude from the evidence that Officer Clark violated Michael's Fourteenth Amendment due process rights when Bane bit Michael.

In sum, there is no evidence that Officer Clark acted intentionally in connection with Bane jumping up and biting Michael – at most, one might infer Officer Clark acted negligently, but negligence does not support an excessive force claim or a due process claim under § 1983. *See Daniels*, 474 U.S. at 333 ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution."). Consequently, Officer Clark's Motion for Summary Judgment is **GRANTED** because the evidence does not support any intentional acts by Officer Clark which resulted in Bane biting Michael, and which could support a Fourth Amendment excessive force claim or a Fourteenth Amendment due process claim.[3]

## IV.
## CONCLUSION

For the foregoing reasons, Officer Clark's Motion for Summary Judgment, [32], is **GRANTED**. Final judgment shall enter accordingly.

Date: 10/21/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

[3] Officer Clark also argues that any attempt by Michael to assert a state law negligence claim "would be futile because [he] has not submitted a tort claim notice prior to filing suit," but the Court need not address that argument as Michael does not assert a negligence claim. Additionally, Officer Clark argues that Michael cannot bring suit against him in his personal capacity because Michael "has not alleged Officer Clark has acted in a criminal, malicious, or willful or wanton manner, or in a manner that is clearly outside the scope of his employment or calculated to benefit the employee personally." [Filing No. 36 at 16-17.] Because the Court has found that Michael's claims fail as a matter of law due to a lack of intentional conduct by Officer Clark, it need not address this additional argument either.

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Michael Cheek
Bartholomew County Jail
543 2nd Street
Columbus, IN 47201